IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

NAIMABDULL SAVASTANO,

                        Plaintiff,                          Civil Action No.
            v.                                              9:17-CV-0364 (TJM/DEP)

SUPERINTENDENT D. LaCLAIR and
CHAPLAIN D. WILDER,

                        Defendants.

APPEARANCES:

FOR PLAINTIFF:

NAIMABDULL SAVASTANO, *Pro se*
16-A-2321
Franklin Correctional Facility
62 Bare Hill Road
P.O. Box 10
Malone, NY 12953

FOR DEFENDANTS:

HON. BARBARA UNDERWOOD                   DAVID ROSENBERG, ESQ.
New York State Attorney General          Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought by *pro se* plaintiff Naimabdull Savastano, a New York State prison inmate, pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), against two individuals employed at the prison facility in which plaintiff is confined. As alleged in plaintiff's second amended complaint ("SAC"), the currently operative pleading, defendants have violated plaintiff's rights to freely exercise his religion under the First Amendment and the RLUIPA and violated his right to equal protection under the Fourteenth Amendment.

Although one of the defendants has answered plaintiff's SAC, the other defendant, Superintendent Darwin LaClair, has moved seeking dismissal of plaintiff's claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that plaintiff's claims seeking monetary damages against defendant LaClair in his official capacity be dismissed, but that his motion otherwise be denied.

2

I.    <u>BACKGROUND</u>[1]

Plaintiff is a prison inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at the Franklin Correctional Facility ("Franklin"), a medium security prison located in Malone, New York. Dkt. No. 16 at 1. Plaintiff is a member of the Islamic religious faith. *Id.* at 2. Defendant LaClair serves as the superintendent at Franklin, and defendant D. Wilder is a Roman Catholic chaplain assigned to oversee the religious needs of members of the Islamic inmate community at Franklin. *Id.* at 1-3. At the time plaintiff's SAC was filed, there was no imam stationed at the facility.[2] *Id.*

According to plaintiff, because Franklin does not have an imam stationed at the facility, Muslim inmates are deprived of the right to practice their religion, including to be provided with a diet in accordance with their religious beliefs. Dkt. No. 16 at 3-4. In particular, plaintiff

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's SAC, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendants' motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

[2]    According to a declaration submitted by defendant LaClair in support of the pending motion, an imam has been hired to work at Franklin since the time plaintiff commenced this action. Dkt. No. 25-3 at 2. The imam was scheduled to begin his employment on September 13, 2017. *Id.*

alleges that he selected a Kosher diet at Franklin because it is compliant with his beliefs, but ultimately was denied that selection because he is not Jewish. *Id.* at 4. Plaintiff also alleges that no Halal foods are sold at the Franklin commissary, and that the rules and policies at Franklin have been enacted and enforced by defendants in a manner that restricts his ability to participate in religious holidays. *Id.* at 3-4.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action in the United States District Court for the Southern District of New York on or about March 24, 2017. Dkt. No. 2. Because plaintiff's claims arose in the Northern District of New York, on March 27, 2017, Chief District Judge Colleen McMahon of the Southern District of New York ordered that the matter be transferred to this court. Dkt. No. 3. Following that transfer, and a review of plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP"), Senior District Judge Thomas J. McAvoy issued a text order on April 3, 2017, denying plaintiff's IFP application as incomplete and ordering that the matter be administratively closed. Dkt. No. 5. The case was subsequently reopened on April 14, 2017, however, after plaintiff cured the IFP deficiency. Dkt. No. 7.

On May 18, 2017, Judge McAvoy issued a decision in which, after

reviewing plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A, he (1) granted plaintiff's IFP application, (2) dismissed plaintiff's claims against the State of New York with prejudice, and (3) dismissed plaintiff's remaining claims based upon lack of personal involvement. Dkt. No. 8.

Plaintiff filed a first amended complaint on July 5, 2017. Dkt. No. 13. After reviewing that pleading, Judge McAvoy issued a decision on July 18, 2017, accepting it for filing but dismissing plaintiff's claims asserted against defendant Anthony Annucci, the Acting Commissioner of the DOCCS. Dkt. No. 14.

Plaintiff filed his SAC on July 31, 2017. Dkt. No. 16. Plaintiff's SAC contains three causes of action, which, liberally construed, include (1) a claim that defendants LaClair and Wilder have deprived plaintiff of his right to freely exercise his religion under the First Amendment to the United States Constitution; (2) an equal protection claim asserted against defendant LaClair under the Fourteenth Amendment; and (3) a RLUIPA cause of action asserted against defendant LaClair.[3]  *See generally id.*

---

[3]      In his prior order, dated July 18, 2017, Judge McAvoy noted that the RLUIPA does not authorize awards of monetary damages against state officials sued in their official capacities. Dkt. No. 14 at 5. In his decision and order dated August 22, 2017, Judge McAvoy concluded that, in his SAC, "[p]laintiff does not seek to reinstate his RLUIPA claim for monetary damage, but, rather, seeks injunctive relief against the Franklin C.F. defendants." Dkt. No. 23 at 3. There appears to be a question, however, as to whether plaintiff's second cause of action, which mentions the RLUIPA and seeks damages in the amount of $75 million, in essence represents

Plaintiff's SAC requests both monetary relief and an injunction directing either the hiring of a qualified imam at Franklin or, alternatively, that he be transferred to another prison facility where there is an imam on staff.[4] *Id.* at 4, 6, 7.

On September 1, 2017, defendant LaClair moved to dismiss plaintiff's claims against him.[5] Dkt. No. 25. In support of his motion, defendant LaClair argues that (1) the damage claims asserted against him in his official capacity are barred by the Eleventh Amendment; (2) to the extent plaintiff's damage claims are asserted against him individually, they are subject to dismissal for lack of personal involvement; and (3) plaintiff's RLUIPA claim asserted against him for injunctive relief should be dismissed as moot based upon the hiring of an imam to work at Franklin. Dkt. No. 25-1. With the submission of a memorandum in opposition to the pending motion, Dkt. No. 29, and a reply on behalf of

---

plaintiff's attempt to revive a claim that was previously dismissed by the court. Dkt. No. 16 at 5-6. To the extent plaintiff's second cause of action could be construed as a claim for damages under the RLUIPA, for reasons previously set forth by the court in its decision and order dated July 18, 2017, I recommend that it be dismissed. Dkt. No. 14 at 5.

[4]    Plaintiffs SAC is unclear as to the specific amounts and what types of monetary damages plaintiff seeks. Dkt. No. 16 at 6-7.

[5]    Defendant LaClair's co-defendant, Chaplain Wilder, filed an answer to plaintiff's SAC on September 5, 2017. Dkt. No. 27.

defendant LaClair, Dkt. No. 30, defendant LaClair's motion is now fully briefed and ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Standard of Review

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be

7

supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this

backdrop, particular deference should be afforded to a *pro se* litigant,
whose complaint merits a generous construction by the court when
determining whether it states a cognizable cause of action. *Erickson*, 551
U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be
held to less stringent standards than formal pleadings drafted by
lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation
omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d
Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to
construe his pleadings liberally." (quotation marks and alterations
omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804
F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint
must be read liberally.").

    B.   <u>Consideration of Materials Outside of Plaintiff's SAC</u>

       In connection with the pending motion, both defendant LaClair and
plaintiff have submitted materials extrinsic to plaintiff's SAC for
consideration by the court. Dkt. No. 25-3; Dkt. No. 29-1. Ordinarily, when
deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of
Civil Procedure, a court "must limit itself to facts stated in the complaint
or in documents attached to the complaint as exhibits or incorporated in
the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767,

773 (2d Cir. 1991). A court may also take judicial notice of certain matters pursuant to Rule 201 of the Federal Rules of Evidence. *Kramer*, 937 F.2d at 773. However, "[i]f a district court wishes to consider additional material, Rule 12(b) requires it to treat the motion as one for summary judgment under Rule 56[.]" *Id.* In particular, Rule 12(d) of the Federal Rules of Civil Procedure provides that, "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56[, and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 154-55 (2d Cir. 2006). "[T]he conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory." *Global Network Commc'ns, Inc.*, 458 F.3d at 155 (internal quotation marks omitted).

Before converting a motion to dismiss under Rule 12(b)(6) into one for summary judgment under Rule 56, formal notice is not required where the non-moving party "should reasonably have recognized the possibility that the motion might be converted into one for summary

judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings." *Villante v. Dep't of Corrs. of City of N.Y.*, 786 F.2d 516, 521 (2d Cir. 1986) (internal quotation marks omitted). In the case of a *pro se* party, however, "[n]otice is particularly important" because the *pro se* litigant "may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983). "Accordingly, *pro se* parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment." *Hernandez v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009).

In this case, I have not considered any of the materials outside of plaintiff's SAC submitted by the parties. Plaintiff, who is proceeding in this matter *pro se*, has not been unequivocally notified by the court of the possibility that defendant LaClair's motion to dismiss under Rule 12(b)(6) would be converted into one for summary judgment under Rule 56 or of the consequences of such conversion. In addition, the early juncture of this action, as well as the fact that discovery is not yet complete, weigh in favor of preserving defendant LaClair's motion as one for dismissal for failure to state a claim upon which relief can be granted and considering only the four corners of plaintiff's SAC. *See Global Networking*

11

*Commc'ns, Inc.*, 458 F.3d at 155 (finding that Rule 56 motions for summary judgment are more appropriate when "testing . . . the substantive merits, . . . where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by [Rule 56]" (internal quotation marks omitted)); *Rodriguez v. Warden, Metro. Corr. Facility*, No. 13-CV-3643, 2015 WL 857817, at *10 (S.D.N.Y. Feb. 27, 2015) (finding that conversion to a motion for summary judgment would not be judicially efficient where no discovery had taken place yet and the plaintiff had not received notice of the court's ability to convert the motion to dismiss to one for summary judgment); *J & J Sports Productions, Inc. v. S & S Lounge, Inc.*, No. 10-CV-5627, 2011 WL 477681, at *1 (E.D.N.Y. Feb. 3, 2011) (deciding not to convert a Rule 12(b)(6) motion "because plaintiff has yet to have the opportunity to conduct any discovery").[6]

### C.   Official Capacity Damage Claims

It is unclear from plaintiff's SAC whether his claims seeking money damages are asserted against defendant LaClair in his individual or official capacity, or both. In support of the pending motion to dismiss,

---

[6]      All unreported decisions cited to in this report have been appended for the convenience of the *pro se* plaintiff.

defendant LaClair argues that, to the extent the damage claims are brought against him in his official capacity, they are barred by the Eleventh Amendment and therefore subject to dismissal. Dkt. No. 25-1 at 9-10.

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of N.Y. App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (*citing, inter alia, Cory v. White*, 457 U.S. 85, 89-91, (1982)). "To the extent that a state official is sued for

13

damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Any damage claims asserted in this action against defendant LaClair in his official capacity are, in reality, claims against the State of New York, and therefore are precluded by the Eleventh Amendment. *Daisernia*, 582 F. Supp. at 798-99. Accordingly, I recommend that, to the extent that any of the damage claims asserted in plaintiff's SAC are lodged against defendant LaClair in his official capacity, those claims be dismissed with prejudice.

### D.  Personal Involvement

Defendant LaClair also contends that plaintiff's SAC fails to allege facts plausibly suggesting his personal involvement in the constitutional violations alleged, and, therefore, plaintiff's First and Fourteenth Amendment claims against him are subject to dismissal on this basis. Dkt. No. 25-1 at 6-9.

"Personal involvement of defendants in alleged constitutional

14

deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

In his SAC, plaintiff alleges that defendant LaClair "enacted rules and interpreted [them] in a way that Islamic inmates can't partake in Rammadan [sic] and other Islamic Holidays, and there has been no Imam since approx. November 2016." Dkt. No. 16 at 4. In reviewing plaintiff's SAC, the court has previously concluded that this allegation, which is identical to the allegations against the defendants set forth in

15

plaintiff's first amended complaint, is sufficient to state a plausible claim against defendant LaClair for purposes of 28 U.S.C. §§ 1915(e), 1915A.[7] Dkt. No. 14 at 4, 6; Dkt. No. 23 at 2-3. In deference to his *pro se* status, and construing plaintiff's SAC with the lenity owing as a result of that status, I recommend a finding that plaintiff's free exercise and equal protection claims are plausibly stated against defendant LaClair, and specifically that his personal involvement in the matters at issue, which plaintiff alleges represent systemic failures at Franklin, including the failure to employ an imam and permit Islamic inmates access to food that is consistent with their religion, is sufficient to withstand defendants' motion to dismiss.

There is an additional reason why defendant LaClair should not be dismissed from this action at the present juncture. While personal involvement of a defendant is a prerequisite to an award of damages under 42 U.S.C. § 1983, that rule is limited to cases in which damages are sought. *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004). The lack of personal involvement, however, is not a bar to an

---

[7]     In both of those initial orders, Judge McAvoy explicitly stated that he expressed no opinion as to whether plaintiff's free exercise and equal protection claims could withstand a properly filed motion to dismiss or for summary judgment. Dkt. No. 14 at 4-5, 6; Dkt. No. 23 at 4.

action seeking prospective injunctive or declaratory relief, provided that the state official has the authority to perform the required act. *Bodie*, 342 F. Supp. 2d at 203; *Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) (citing *Marshall v. Switzer*, 900 F. Supp. 604, 615 (N.D.N.Y. 1995) (Scullin, J.)).

In this case, plaintiff seeks prospective injunctive relief in the form of hiring an imam at Franklin and/or transferring plaintiff to a different correctional facility that has an imam on staff. Dkt. No. 16 at 7. At this juncture, assuming the facts as alleged in the SAC are true, it appears that, as the superintendent of Franklin, defendant LaClair is an appropriate defendant to be named for purposes of plaintiff's claim for injunctive relief. *See id.* at 4 (suggesting that defendant LaClair has the authority to enact and interpret prison rules and policies governing the manner in which inmates exercise their religions, including celebrating religious holidays).

In sum, for the foregoing reasons I recommend that defendant LaClair's motion to dismiss for lack of personal involvement be denied.

17

E.   Mootness

Article III of the Constitution requires the existence of an actual and concrete live controversy to justify court intervention. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). "A case that becomes moot at any point during the proceedings is no longer a Case or Controversy for purposes of Article III, and is outside the jurisdiction of the federal courts." *Sanchez-Gomez*, 138 S. Ct. 1532 (internal quotation marks omitted); *see also Symczyk*, 569 U.S. at 71-72 ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation, the action can no longer proceed and must be dismissed as moot." (internal quotation marks omitted)).

In support of his motion to dismiss, defendant LaClair argues that plaintiff's request for injunctive relief under the RLUIPA is moot because an imam has been hired to work at Franklin and was scheduled to begin the job on September 13, 2017. Dkt. No 25-1 at 10-11. This argument hinges upon the declaration of defendant LaClair. Dkt. No. 25-3. As was discussed above in part III.B. of this report, however, I have not considered any materials extrinsic to plaintiff's SAC submitted by the

18

parties because doing so would require the court to convert defendant LaClair's motion to one for summary judgment and the *pro se* plaintiff has not been given unequivocal notice of the possibility that such conversion may occur. Accordingly, having considered the allegations contained in the four corners of the SAC, I find that it states a plausible, live RLUIPA cause of action and therefore recommend defendant LaClair's motion to dismiss be denied.

IV.   SUMMARY AND RECOMMENDATION

At this early procedural juncture, I conclude that the SAC asserts a cognizable free exercise claim under the First Amendment and a plausible equal protection claim under the Fourteenth Amendment. I also conclude that the RLUIPA claim seeking injunctive relief is not subject to dismissal based upon sole consideration of the four corners of plaintiff's SAC. I do find, however, that plaintiff's damage claims against defendant LaClair in his official capacity are subject to dismissal as precluded under the Eleventh Amendment.

Based upon the foregoing, it is respectfully

RECOMMENDED that defendants' motion to dismiss ([Dkt. No. 25](#))

be GRANTED in part and DENIED in part as follows:

(1)    Plaintiff's damage claims asserted against defendant LaClair

in his official capacity should be DISMISSED;

(2)    To the extent that plaintiff's SAC is construed as asserting a

RLUIPA claim seeking monetary damages against either of the

defendants, that cause of action should be DISMISSED; and

(3)    With the exception of the foregoing, defendant LaClair's

motion to dismiss should be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report. Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this

report.[8] FAILURE TO SO OBJECT TO THIS REPORT WILL

PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[8]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:        May 31, 2018
              Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

2015 WL 857817
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Luis Paulino RODRIGUEZ, Plaintiff,
v.
WARDEN, METROPOLITAN CORRECTIONAL
FACILITY; Dr. Bussanich, Clinical Director of
Metropolitan Correctional Center, Defendants.

No. 13 Civ. 3643(PAC)(SN).
|
Signed Feb. 27, 2015.

### ORDER ADOPTING REPORT
### AND RECOMMENDATION

Honorable PAUL A. CROTTY, District Judge.

**\*1** *Pro se* Plaintiff Luis Paulino Rodriguez
("Rodriguez") brings this action against the Warden of
the Metropolitan Correctional Center ("MCC") and Dr.
Bussanich ("Bussanich"), clinical director of the MCC,
pursuant to *Bivens v. Six Unknown Named Agents of
Federal Bureau of Narcotics,* 403 U.S. 388 (1971). [1]
He alleges that, while a pretrial detainee at the MCC,
he received inadequate medical attention following an
injury he sustained. Bussanich now moves to dismiss the
complaint pursuant to Fed.R.Civ.P. 12(c). On August 5,
2014, Magistrate Judge Sarah Netburn issued a Report
and Recommendation ("R & R") that the Court deny
Bussanich's motion. Dkt. 36. Bussanich filed objections
to the R & R on September 16, 2014. Dkt. 48. For the
following reasons, the Court adopts Magistrate Judge
Netburn's R & R, but grants limited discovery on the issue
of exhaustion of remedies.

### BACKGROUND [2]

#### A. Factual and Procedural Background
On November 28, 2012, Rodriguez fell from the stairs at
the MCC and sustained injuries to his head and back.
R & R at 2. He experienced severe complications from
these injuries. *Id.* at 2–3. He filed grievances concerning
his medical treatment three times using the MCC's Inmate

Request to Staff forms and once by email. *Id.* at 2–3.
On January 9 and 10, 2013, a paralegal at the office
of his attorney wrote to the MCC's legal and medical
departments requesting medical assistance for Rodriguez.
*Id.* at 3–4.

Rodriguez filed his complaint on May 21, 2013, seeking
$2.5 million in compensatory damages and injunctive
relief in the form of medical treatment for his conditions
and repair of the broken steps on which he fell. On
Rodriguez's form complaint, when asked to describe his
efforts to exhaust administrative remedies, Rodriguez
indicated that he "wrote a BP9 to the administration
of MCC. Step two was to the office of the F.B.O.P.,
step three was to the federal civil court." Compl. ¶
IV.E.3. Rodriguez also stated that "my lawyer also
wrote the legal department of MC[C]." *Id.* ¶ IV.F.
Bussanich moved for judgment on the pleadings on
April 8, 2014, arguing that Rodriguez has failed to
exhaust administrative remedies as required by the Prison
Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and
failed to adequately plead personal involvement, and that
Bussanich is shielded from suit by the doctrine of qualified
immunity.

#### B. Magistrate Judge Netburn's Report and
#### Recommendation
In Magistrate Judge Netburn's R & R, she found
that (1) failure to exhaust was not apparent from the
face of the complaint; (2) Rodriguez had adequately
pled that Bussanich was deliberately indifferent to his
serious medical needs; and (3) Rodriguez had sufficiently
alleged Bussanich's personal involvement. R & R at 7–
21. In addition, Magistrate Judge Netburn found that
a determination of qualified immunity was premature
because "the facts supporting the defense do not 'appear
on the face of the complaint.' " R & R at 22 (quoting
*McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004)).
Magistrate Judge Netburn also declined to convert
Bussanich's motion into a motion for summary judgment
by considering documents outside of the pleadings
submitted by Bussanich to show Rodriguez's failure to
exhaust. R & R at 11–13.

**\*2** With respect to the finding on failure to
exhaust, Magistrate Judge Netburn examined Rodriguez's
complaint and determined that Rodriguez "has not pled
that he did not exhaust; and at this stage in the litigation,
he does not need to demonstrate that he did." R & R at 10.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Magistrate Judge Netburn rejected Bussanich's argument that Rodriguez's complaint made clear that he did not pursue relief beyond the initial stage of informal resolution for two of his grievances, and that he did not pursue relief beyond the second stage for the remaining grievances. *Id.* at 9–10. Magistrate Judge Netburn found that because "exhaustion is not an affirmative pleading requirement, ... Rodriguez cannot be penalized for what he does not say in his pleading about his efforts to exhaust." *Id* . at 10.

Magistrate Judge Netburn also recommended prohibiting limited discovery on the issue of exhaustion because "such a measure would not serve any desirable judicial end." R & R at 12. The R & R found that bifurcating discovery in such a manner would unnecessarily complicate and delay proceedings and that full fact discovery would not be so extensive as to hinder timely resolution of the action. *Id.* at 13.

### C. Bussanich's Objections

Bussanich objects to Magistrate Judge Netburn's finding that Rodriguez's complaint did not demonstrate failure to exhaust on its face. Objections at 2. Bussanich argues that the complaint clearly shows a failure to exhaust administrative remedies. *Id.* at 6–8. Bussanich describes Rodriguez's claims in his complaint regarding his efforts to exhaust, and argues that "[these allegations make clear that Plaintiff never completed the fourth step of the administrative process-an appeal to the office of General Counsel-and therefore failed to exhaust available administrative remedies." *Id.* at 7.

Bussanich argues that should the Court find that Rodriguez's failure to exhaust is not clear from the face of the complaint, the Court should permit limited discovery regarding exhaustion. *Id.* at 8. Bussanich asserts that discovery solely with respect to exhaustion would be limited and swift, while full discovery would be extensive, complicated, and protracted. *Id.*

### *DISCUSSION*

### I. Standard of Review

When considering a report and recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *28 U.S.C. § 636(b) (1)(C).* The Court must review

*de novo* those findings to which an objection has been timely filed. *See Arista Records LLC v. Doe 3,* 604 F.3d 110, 116 (2d Cir.2010). "However, where a party does not submit a timely objection, 'a district court need only satisfy itself that there is no clear error on the face of the record.' ' *Martinson v. U.S. Parole Comm'n,* 2005 WL 1309054, at *3 (S.D.N.Y. June 1, 2005) (internal citations omitted). In light of Rodriguez's *pro se* status, the Court reads his filings liberally and construes them to raise the strongest arguments that they suggest. *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010).

### II. Plaintiff's Failure to Exhaust

### A. The Prison Litigation Reform Act

**\*3** The PLRA holds that "[n]o action shall be brought with respect to prison conditions under ... any ... Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a);* *see also Porter v. Nussle,* 534 U.S. 516, 524 (2002) (discussing the application of the exhaustion requirement to *Bivens* claims). A prisoner need only comply with prison grievance procedures to properly exhaust, *Jones v. Bock,* 549 U.S. 199, 218 (2007), and must complete "all steps that the agency holds out," *Woodford v. Ngo,* 548 U.S. 81, 90 (2006). Because the MCC is a BOP-operated facility, the grievance procedure applicable to Rodriguez's claim is the "Administrative Remedy Program," which requires that the inmate (1) seek informal resolution of his grievance through an internal procedure; (2) file an Administrative Remedy Request using the BP–9 form addressed to the Warden within twenty days of the incident; (3) file a Regional Appeal of any unfavorable response on a BP– 10 form to the Regional Director within twenty days of the Warden's response; and (4) further appeal any decision to the General Counsel in Washington D.C. within thirty days of a response. *See* R & R at 8–9; *28 C.F.R. § 542.13(a), § 542.14(a), § 542.15(a).*

Failure to exhaust constitutes an affirmative defense and need not be pled or demonstrated in a complaint. *Jones,* 549 U.S. at 216. The Court may only grant a motion to dismiss based on failure to exhaust if non-exhaustion is clear from the face of the complaint. *See Lewis v. City of N. Y.,* 2013 WL 3833001, at *3 (S.D.N.Y. July 23, 2013).

### B. Plaintiffs Exhaustion

Magistrate Judge Netburn found that Rodriguez's failure to exhaust was not demonstrated on the face of the complaint. The R & R concluded that "Rodriguez cannot be penalized for what he does not say in his pleading about his efforts to exhaust" and that, particularly in light of Rodriguez's *pro se* status, "statements of the efforts he took [to exhaust] cannot be construed to mean that he did not pursue the proper avenues for exhaustion." R & R at 10. Bussanich objects, arguing that Rodriguez's complaint acknowledges the existence of the grievance process and his failure to comply therewith. Objections at 7.

Upon *de novo* review of the complaint, and considering Rodriguez's *pro se* status, the Court finds that the failure to exhaust administrative remedies is not clear from the face of the complaint. Rodriguez's statements regarding his exhaustion attempts are ambiguous and somewhat opaque. Moreover, there is no indication that they represent the entirety of his efforts. While Rodriguez's complaint may suggest a failure to exhaust, such failure is not directly evident from the face of the complaint. *See Parris v. N.Y. State Dep't Corr. Servs.,* 947 F.Supp.2d 354, 361–62 ("[A]mbiguity is not a valid basis for dismissal under *Jones,* which does not require that the plaintiff demonstrate exhaustion in the complaint."); *Smalls v. Jummonte,* 2010 WL 3291587, at *3 (S .D.N.Y. Aug. 13, 2010).

### C. Limited Discovery Regarding Exhaustion

 **\*4** Bussanich argues that discovery "solely on the issue of exhaustion would be very limited and could be complete[d] quickly," as could "any further motion practice on that issue." Objections at 8. The Court agrees that discovery limited to the issue of Rodriguez's exhaustion would be expedient, and would not unnecessarily delay or complicate the action.

### CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Netburn's August 5, 2014 R & R. Accordingly, Bussanich's motion for judgment on the pleadings is denied. The parties should engage in expedited, limited discovery on the issue of Rodriguez's exhaustion efforts. The order of reference to Magistrate Judge Netburn continues for further disposition of this matter.

SO ORDERED.

### *REPORT AND RECOMMENDATION*

SARAH NETBURN, United States Magistrate Judge.

**TO THE HONORABLE PAUL A. CROTTY:**

Luis Paulino Rodriguez, proceeding *pro se,* brings this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), [1] alleging that defendants, Warden of the Metropolitan Correctional Center ("MCC") and Dr. Bussanich, clinical director of the MCC, violated his rights to adequate medical treatment. Specifically, Rodriguez alleges that he was injured when he fell from the stairs while at the MCC, and that due to the inadequate medical attention provided by the MCC officials, he suffers from ongoing pain and complications from his injuries.

Defendant Bussanich has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Bussanich advances several arguments: (1) failure to exhaust available administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e; (2) failure to plead adequately the personal involvement of Bussanich; and (3) protection of Bussanich from suit under the doctrine of qualified immunity. For the reasons set forth below, I recommend that Bussanich's motion be DENIED.

### BACKGROUND

The following facts alleged by Rodriguez in his pleadings and the documents attached thereto are assumed to be true for the purposes of this report and recommendation. *In re September 11 Litig.,* 751 F.3d 86, 90 (2d Cir.2014) (citing *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999)).

### I. Factual Background

On November 28, 2012, while walking down the stairs in unit 9 north, tier 2, of the MCC, Rodriguez tripped in a hole in the steps and fell. As a result of the fall, Rodriguez temporarily lost consciousness and sustained injuries to his head and back. Rodriguez was transported to the New York Downtown Hospital ("NYDH"), where he regained consciousness. After Rodriguez was admitted

to the NYDH, x-rays were taken and two sedatives were prescribed to relieve the pain from his injuries. Upon completion of these procedures, Rodriguez was discharged from the hospital and transported back to the MCC, despite his request for a more extensive examination of his injuries.

**\*5**  Rodriguez alleges several complications attributable to the accident, which include "persistent pain in his head and back," sleep loss, "pain along [the] right upper leg," habitual dislocation of the shoulder(s), temporary blindness following his fall and blurry vision after regaining sight, "serious bowel movement irregularities," bloody stool, difficulty with his short-term memory, depression, and auditory hallucinations. (Compl. at 3, 9–10.) On three occasions Rodriguez grieved these conditions using the MCC's Inmate Request to Staff forms: (1) on December 14, 2012, to the medical department complaining of blurry vision and continued pain in his back, neck, and right leg, and requesting a change in his existing medication, which had worsened his headaches and resulted in nausea, vomiting, and diarrhea; (2) on December 14, 2012, to the psychology department requesting an appointment to address his memory loss, depression, sleep loss, and auditory hallucinations; and (3) on January 1, 2013, to Bussanich in Health Services, complaining again of pain in his back, neck, shoulder, and right leg, blurry vision, vomiting, and diarrhea resulting from his medication.

On December 18, 2012, Rodriguez similarly grieved these conditions in an email to Health Services addressed to Bussanich and Ms. Okuth, in which he detailed his injuries and accused Bussanich and Okuth of ignoring his complaints:

> I am in dire need of being seen immediately by a specialist at an outside hospital. I was given Meloxicam and it is making my headaches stronger, I hear voices in my head, I have diarrhea, and I am vomitting [sic]. I hit my head very hard and was shaking and going into convulsions and yet and [sic] still every time I tell you about these things you continue to send me back to my unit and incorrectly diagnose me and give me medication that makes me sick and worsens my

> condition.... I implore you to please send me immediately to the outside hospital. My life is at stake and MCC is not a medical facility.

(Compl. at 15 (emphases omitted).)

Additionally, a paralegal at the office of Julia Gatto, attorney for Rodriguez, wrote a letter on January 9, 2013, to the legal and medical departments at the MCC detailing the circumstances of the November 28, 2012 accident, describing Rodriguez's medical condition, and requesting immediate medical assistance. The letter indicated that Rodriguez was not receiving any pain medications at that time. It also noted that Rodriguez had never been provided with a diagnosis for his bloody stool and that he "remained untreated." (Compl. at 10.) The letter requested pain medication, an eye examination, an examination of Rodriguez's bowels, a psychiatric evaluation, and the presence of a Spanish-speaking staff member at Rodriguez's medical appointments so information could be communicated reliably. These requests for appointments and treatment were made due to "the alarming nature of Mr. Paulino–Rodriguez's deteriorating physical and mental health." (Compl. at 10.) On January 10, 2013, the paralegal again requested urgent medical attention for Rodriguez and attached to his letter copies of the December 2012 and January 2013 grievances along with Rodriguez's email to Bussanich and Okuth.

**\*6**  Rodriguez seeks injunctive relief in the form of medical treatment for his conditions and repair of the broken steps as well as an award of $2.5 million in compensatory damages.[2] He also requests legal assistance in Spanish.

## II. Procedural Background

On May 21, 2013, Rodriguez filed his complaint against the federal Bureau of Prisons ("BOP"), Insurance of the MCC, and the Medical Administration of the MCC ("Medical Administration").[3] On August 1, 2013, construing Rodriguez's complaint to constitute a *Bivens* action, Judge Crotty dismissed Rodriguez's claims against the institutional defendant Insurance of the MCC and replaced the institutional defendants BOP and Medical Administration with "Warden, Metropolitan Correctional Facility" and "John or Jane Doe, head of Medical Care at Metropolitan Correctional Facility,"

respectively. On August 6, 2013, Judge Crotty referred Rodriguez's case to me for general pretrial supervision and to report and recommend on any dispositive motion. On October 1, 2013, the United States Attorney for the Southern District of New York identified defendant "John or Jane Doe" as Bussanich, the clinical director of the MCC, and on October 2, 2013, the Court directed that the caption for this case be amended accordingly to replace the unnamed defendant with Dr. Bussanich. The United States Attorney has been unable to identify the Warden due to the vacancy of the office at the time of Rodriguez's incident.

On December 30, 2013, defendant Bussanich filed his answer to Rodriguez's complaint. Rodriguez filed an affirmation in opposition to motion, dated February 3, 2014, with an attached letter written in Spanish. This document is apparently intended to serve as an opposition in anticipation of Bussanich's motion for judgment on the pleadings, which had not been filed at the time. On February 26, 2014, the Court instructed Rodriguez to file another opposition, in English, after the motion for judgment on the pleadings had been filed.

After three requests for extension of time, Bussanich filed his motion for judgment on the pleadings on April 8, 2014, attaching a declaration from Jacqueline Facey, a legal assistant at the MCC. Because Rodriguez never opposed the motion despite the Court's earlier instruction to do so, Bussanich's motion for judgment on the pleadings was deemed fully submitted on May 28, 2014.

## DISCUSSION

### I. Standard of Review
A party may move for judgment on the pleadings "[a]fter the pleadings are closed-but early enough not to delay trial." *Fed.R.Civ.P. 12(c).* When reviewing a *Rule 12(c)* motion, the Court applies the same standard applicable to a *Rule 12(b)(6)* motion to dismiss. *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010). Under that standard, the Court must take "factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009) (citation omitted). The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059,

1067 (2d Cir.1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

**\*7** "On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.' " *L–7 Designs, Inc. v. Old Navy,* 647 F.3d 419, 422 (2d Cir.2011) (quoting *Roberts v. Babkiewicz,* 582 F.3d 418, 419 (2d Cir.2009)). In addition, the Court may review any materials incorporated by reference in one of the pleadings, and documents that, although not specifically incorporated by reference, are integral to the complaint. *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations and quotation marks omitted). The Court, however, should exclude from its consideration materials presented outside of the pleadings. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 154 (2d Cir.2002).

The Court may not grant an unopposed motion, as in this case, without reviewing the record and determining whether there is sufficient support to do so. *See Kinlaw v. Walsh,* 10 Civ. 07539(RMB)(JLC), 2012 WL 2548437, at *1 (S.D.N.Y. June 29, 2012); *see also Vt. Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir.2004) ("[C]ourts, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law" (citation and internal quotation marks omitted)).

When faced with *a pro se* litigant, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest [s]," *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (citation and internal quotation marks omitted) (alterations in original), "particularly when [the pleadings] allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197,

200 (2d Cir.2004). *Accord Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). "Even in a *pro se* case, however, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis,* 618 F.3d at 170 (citation and internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

## II. Exhaustion of Administrative Remedies

Bussanich first argues that Rodriguez did not comply with the BOP's grievance procedures and, therefore, his action is barred under the PLRA.

### A. Legal Standard

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ..., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies equally to *Bivens* claims, *Porter v. Nussle,* 534 U.S. 516, 524 (2002), and is mandatory "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible," *Booth v. Churner,* 532 U.S. 731, 739 (2001). It covers "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532 (citation omitted).

**\*8** "[F]ailure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216 (2007); *accord* 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure: Jurisdiction* § 3573.4 (3d ed.2008). Dismissal under Rule 12(c) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is evidenced on the face of the complaint. *Jones,* 549 U.S. at 214; *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted."); *see also Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998) ("An affirmative defense may be raised by a [Rule 12(b)(6) motion to dismiss], without resort to

summary judgment procedure, if the defense appears on the face of the complaint.").

### B. The Administrative Remedy Program

The MCC is a facility operated by the BOP. "The BOP provides [inmates with] a grievance procedure applicable to confinement-related issues." *Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). "The procedure is called the Administrative Remedy Program ("ARP"), and consists of up to four steps, depending upon the circumstances." Id *See* 28 C.F.R. § 542.10–542.15. In Rodriguez's case, an inmate is required first to seek informal resolution of his grievance through an internal procedure(s) established by the Warden. Id 28 C.F.R. § 542.13(a). If the matter is not resolved, he must file an Administrative Remedy Request using the appropriate form ("BP–9") at the MCC addressed to the Warden within 20 days of the incident. *Id.* 28 C .F.R. § 542.14(a). If the inmate is not satisfied with the MCC's response, he may file a Regional Appeal on the appropriate form ("BP–10") to the Regional Director within 20 days of the Warden's response. *Id.* 28 C.F.R. § 542.15(a). If the inmate is still not satisfied with the Regional Director's response, he may further appeal the decision to the General Counsel, Central Office in Washington D.C., within 30 days of the Regional Director's response. Id 28 C.F.R. § 542.15(a). At all stages of the Administrative Remedy Program, if the inmate does not receive a response within the time allotted for reply, he may consider the absence of response to be a denial at that level. 28 C.F.R. § 542.18.

### C. Rodriguez's Grievances

Rodriguez states that he filed his grievances at the MCC, requesting "emergency medical attention" and "therapy." (Compl. at 4.) Rodriguez did not receive a response to his grievances. Rodriguez attached copies of Inmate Request to Staff forms addressed to Health Services and the medical and psychology departments at the MCC. He also attached the email sent to Bussanich and Okuth with the subject line "Request to Staff" describing his illness. Prompted by the Southern District of New York's form complaint, which asks the plaintiff to describe "all efforts to appeal to the highest level of the grievance process," Rodriguez answered that he "wrote a BP9 to the administration of MCC. Step two was to the office of the F.B.O.P., step three was to the federal civil court." (*Id.*) Rodriguez, however, did not attach any copies of these forms to his complaint.

### D. Whether Rodriguez Properly Exhausted His Remedies

**\*9** Bussanich asserts that Rodriguez failed to exhaust available administrative remedies because he failed to pursue relief beyond the initial stage of informal resolution with respect to two of the four grievances and similarly failed to advance beyond the second stage (BP–9) with respect to the remaining grievances. As evidence of non-exhaustion, Bussanich submits the declaration of Facey describing the actual efforts taken by Rodriguez to seek administrative remedies.

*Jones* precludes Bussanich's argument. If exhaustion is not an affirmative pleading requirement, then Rodriguez cannot be penalized for what he does not say in his pleading about his efforts to exhaust. Thus, and especially in light of the liberal *pro se* pleading requirements, Rodriguez's statements of the efforts he took cannot be construed to mean that he did not pursue the proper avenues for exhaustion. *See Jones,* 549 U.S. at 214 ("Although exhaustion was a 'centerpiece' of the PLRA ..., failure to exhaust was notably not added [to the four enumerated grounds for preliminary judicial screening]. There is thus no reason to suppose that the normal pleading rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust .").

Rodriguez has not pled that he did not exhaust; and at this stage in the litigation, he does not need to demonstrate that he did. *See id.* at 216 (holding that prisoners need not demonstrate exhaustion in their complaints); *Pratt v. City of New York,* 929 F.Supp.3d 314, 318 (S.D.N.Y.2013) (finding when amended complaint did not establish plaintiff failed to comply with grievance procedures, "scope of proper [A.M.K.C] grievance procedure, [and] whether the plaintiff followed that procedure properly ... should [not] be determined on ... a motion to dismiss"); *Smalls v. Jummonte,* 08 Civ. 04367(DAB), 2010 WL 3291587, at \*3 (S.D.N.Y. Aug. 13, 2010) ("While the evidence submitted by Defendants suggests that Plaintiff did not follow the DOC's established grievance procedure, nonexhaustion is not apparent from the face of the Complaint, and Plaintiff must be afforded the opportunity to respond to Defendants' evidence with his own, if any."); *see also Johnson v. Westchester Cnty. Dep't of Corr. Medical Dep't,* 10 Civ. 06309(JGK), 2011 WL 2946168, at \*2 (S.D.N.Y. July 19, 2011) (finding that plaintiff's

allegations that he filed a complaint, "followed all Rules and [Procedures]," and that "[t]he inmate Grievance within this facility fails to maintain an adequate grievance system" lacked specifics, but was not valid basis for dismissal); *Bailey v. Fortier,* 09 Civ. 00742(GLS) (DEP), 2010 WL 4005258, at \*6 (N.D.N.Y. Aug. 30, 2010) ("It should be noted that courts are generally [hesitant] to dispose of the exhaustion defense on a motion to dismiss, and ordinarily will dismiss a complaint at that stage only if it is patently clear from the face of plaintiff's complaint that exhaustion has not occurred and there is no basis to excuse PLRA exhaustion requirement." (citation omitted)), *report and recommendation adopted.* 2010 WL 3999629 (Oct. 12, 2010).

**\*10** Moreover, evidence submitted by Bussanich suggesting that Rodriguez did not in fact exhaust will not be considered at this stage of the litigation for the same reason that such inference must be apparent from the face of the complaint. *Smalls,* 2010 WL 3291587, at \*3 (excluding evidence of non-exhaustion submitted by defendants outside of the pleadings in disposing motion for judgment on the pleadings); *Ellis v. Guarino,* 03 Civ. 6562(DAB)(AJP), 2004 WL 1879834, at \*5 (S.D.N.Y. Aug. 24, 2004) ("[D]ismissal under Rule 12(b)(6) is only appropriate where failure to exhaust is apparent from the face of the complaint." (internal quotation marks omitted) (citing *McCoy,* 255 F.Supp. at 249)).

### E. Converting Motion for Judgment on the Pleadings into Motion for Summary Judgment

Bussanich submits Facey's declaration, with additional documents, that purportedly shows Rodriguez's failure to exhaust. But, as discussed above, these documents constitute evidence outside of the pleadings. For the Court to consider this evidence, Bussanich's motion for judgment on the pleadings must be converted into a motion for summary judgment. *Sira,* 380 F.3d at 66 ("[a] district court must convert a motion for judgment on the pleadings to one for summary judgment if the motion includes material outside the pleadings and that material is not excluded by the court" (citations and internal quotation marks omitted)); *See Kopec v. Coughlin,* 922 F.2d 152, 155–56 (2d Cir.1991) ("when presented with material outside of the pleadings pursuant to a Rule 12(b)(6) motion to dismiss, [a] district court must either disregard the material" or convert the motion into one for summary judgment to consider the extrinsic evidence). For the reasons stated below, the Court declines to

convert *sua sponte* Bussanich's motion for judgment on the pleadings into a motion for summary judgment.

First, if the Court were to convert the motion, "all parties [must be afforded] the opportunity to present supporting material." *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000). This is especially true when a plaintiff proceeds *pro se* and is provided no notice that the motion might be converted. *Hernandez v. Coffey,* 582 F.3d 303, 307–08 (2d Cir.2009) ("*[P]ro se* parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment."); *cf., e.g., Mateo v. Alexander,* 08 Civ. 08797(RJH)(DCF), 2010 WL 431718, at *7 (S.D.N.Y. Feb. 9, 2010) (converting motion when defendants notified *pro se* plaintiff "that the Court might choose to treat the motion as one for summary judgment, and that to oppose it, [plaintiff] would need to submit evidence"). Here, there is no indication that Bussanich provided Rodriguez with notice that the motion might be converted pursuant to Local Civil Rule 12.1 of the Local Rules of the United States District Courts for the Southern and Eastern District of New York.

Additionally, although the Court may permit limited discovery exclusively on the issue of exhaustion, such a measure would not serve any desirable judicial end. *Cf. Stevens v. City of New York,* 12 Civ. 01918(JPO) (JLC), 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (discussing that a court must "[b]alanc [e] the need to secure the PLRA's mandates of efficiency and early resolution of prisoner rights suits against litigants' interest in a just disposition of their suits" (citing *McCoy,* 255 F.Supp.2d at 249)). On the contrary, bifurcating discovery, with additional motion practice, creates the potential for complication and delay: indeed, individuals might well be deposed first on exhaustion and again on the merits. The Court does not anticipate that full fact discovery will be sufficiently laborious, moreover, to counter plaintiff's interest in a timely disposition of his suit.

**\*11** For these reasons, the Court declines to convert this motion *sua sponte* into a motion for summary judgment. *See, Pratt,* 929 F.Supp.2d at 319 (declining to convert motion to dismiss into motion for summary judgment because "the parties [were] entitled to an opportunity to take discovery and submit additional relevant evidence, [but] the parties [had] not yet been allowed such an opportunity" (citing *Hernandez,* 582 F.3d at 309)).

## III. Deliberate Indifference to Serious Medical Needs [4]

Rodriguez has alleged that Bussanich was deliberately indifferent to his medical needs in violation of the Eighth Amendment. [5] "The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006) (citing *Farmer v. Brennan,* 511 U.S. 825 (1994)). "Yet not every lapse in medical care is a constitutional wrong." Id Rather, inadequacy in medical care violates the Eighth Amendment only when a prison official manifests "deliberate indifference to [an inmate's] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("The infliction of [ ] unnecessary suffering is inconsistent with contemporary standards of decency" and "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" (citation and internal quotation marks omitted)). To establish deliberate indifference, a plaintiff must demonstrate both that the deprivation of care is sufficiently serious-the objective component-and that the official charged with the deprivation acted with deliberate indifference-the subjective component. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Salahuddin, 467 F.3d at 279–81.*

### A. Serious Deprivation-the Objective Component

#### 1. Legal Standard

To satisfy the objective component, the alleged deprivation of adequate medical care must be "sufficiently serious." *Farmer,* 511 U.S. at 834; *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." (citation and internal quotation marks omitted)). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries": (1) whether the detainee was "actually deprived of adequate medical care" and (2) whether the inadequacy in medical care was "sufficiently serious." *Salahuddin,* 467 F.3d at 279–80. The first inquiry is satisfied when the prison official fails "to take reasonable measures in response to a medical condition." *Id.* at 280 (citing and quoting *Farmer,*

511 U.S. at 847) (internal quotation marks omitted). The second inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* (citation omitted)

### 2. Application

**\*12** Rodriguez attached to his complaint a form request and an email both addressed to Bussanich personally, detailing the state of his medical condition and requesting assistance. Rodriguez informed Bussanich that during his fall he hit his head "very hard" and began convulsing. (Compl. at 15.) He complained of continued pain in his neck, shoulder, and right leg, a "very painful headache," diarrhea, blurry vision, vomiting, and auditory hallucinations. (Compl. at 12.) In these correspondences, Rodriguez begged to be seen at a hospital, indicating that he believed his life was at stake. A letter from the paralegal of his attorney, which was attached to his complaint, also notes the severity of Rodriguez's condition: "These requests [for treatment] are made considering the alarming nature of Mr. Paulino–Rodriguez's deteriorating physical and mental health.... If Mr. Paulino–Rodriguez's physical and mental health is not immediately considered, we fear that future complications may severely jeopardize his wellbeing." (Compl. at 10 .)

Rodriguez alleges the only treatment he received was painkillers. He accuses Bussanich of repeatedly ignoring his condition and sending him back to his unit without a proper diagnosis and with medication that made his condition worse. (Compl. at 15.) Rodriguez appears to have suffered physical pain, vomiting, diarrhea, blurry vision, and auditory hallucinations, without any other treatment than pain killers, for a period of at least six months: from the date of his fall on November 23, 2013, to the time of the filing of his complaint on May 23, 2013. (Compl. at 1, 15.)

The Court finds that the combination of Bussanich's failure to take reasonable measures in response to Rodriguez's serious medical conditions and the resulting harm of this inaction are sufficiently serious. *See e.g., Morrison v. Mamis,* 08 Civ. 4302(PAC)(AJP), 2008 WL 5451639, at *8 (S.D.N.Y. Dec. 18, 2008), *report and recommendation adopted,* 2009 WL 2168845 (July 20, 2009) (holding that severe back pain over a period of approximately seven months and migraine headaches that

did not respond to painkillers constituted serious medical conditions); *Palmer v. New York Dep't of Corr.,* 13 Civ. 2529(PKC), 2014 WL 1338068, at *4 (S.D.N.Y. Mar. 31, 2014) (holding that "frequent pain and blurred-blacken double vision" are sufficiently serious).

Accordingly, Rodriguez has pled facts sufficient to satisfy the objective component of deliberate indifference.

### B. Deliberate Indifference-the Subjective Component

### 1. Legal Standard

Pleading a constitutional deprivation alone is insufficient for establishing an Eighth Amendment violation. A plaintiff must also plead the subjective component: that the charged official acted with a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (citing *Wilson,* 501 U.S. at 297). For inadequate medical care claims, the charged official possesses that state of mind when he acts or fails to act with "deliberate indifference" to an inmate's health or safety. *Id.* (citing *Wilson,* 501 U.S. at 302–303). In defining deliberate indifference, the Supreme Court has adopted subjective recklessness as the standard, requiring "more than mere negligence" but less than "purpose of causing harm" or "knowledge that harm will result." Id at 835 (citing *Estelle* 429 U.S. at 97; *Hudson,* 503 U.S. at 6–7; *Whitley v.. Albers,* 475 U.S. 312, 320 (1986).) Rather, deliberate indifference is satisfied when the charged official is aware of "an excessive risk to inmate health or safety" posed by the deprivation of care but disregards the risk. Id at 837.

### 2. Application

**\*13** Rodriguez complains of multiple symptoms-persistent pain in his head, neck, shoulder and right leg and, perhaps, more alarmingly, chronic headaches, bloody stool, nausea, vomiting, depression and auditory hallucinations. These conditions, which persisted for a prolonged period of time without response to painkillers, present a serious risk of harm to his health and safety that Bussanich was not free to ignore. *See Baptiste v. Warden at Ottisville, FCI New York,* 09 Civ. 5523(AKH), 2010 WL 3185748, at *8 (S.D.N.Y. Aug. 11, 2010) (finding deliberate indifference where the treating physician was aware that the current diagnosis was one of many possible causes of an inmate's breathing problems and, despite this knowledge, watched the inmate endure "pain and suffering and loss of eyesight, instead of discontinuing

the [current] therapy and performing additional tests to arrive at a more conclusive diagnosis." (internal quotation marks omitted)); *Ahart v. Willingham,* 05 Civ. 1016(JCH) (HBF), 2007 WL 842006, at *4 (D.Conn. Mar. 15, 2007) (finding plaintiff sufficiently pled deliberate indifference where the treating physician did not timely order an examination for glaucoma despite the inmate's repeated complaints of disease-related symptoms and did not comply with physician directives regarding follow-up).

Rodriguez and his legal representative, through several correspondences, alerted Bussanich and the medical department to the seriousness of Rodriguez's condition and the need for urgent treatment. At this stage of the litigation, Rodriguez need not demonstrate actual receipt or inspection of these correspondences; rather, he is entitled to the Court's reasonable inference that Bussanich "in fact received the letter, read it, and thereby became aware of the alleged conditions of which [Rodriguez] complained." *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir.2013) (holding that at the pleading stage, even if plaintiff had no knowledge or information as to what became of his letter after he sent it, if the letter was appropriately addressed and sent through proper means, he or she would be entitled to the reasonable inference that the charged official-the recipient-in fact received the letter, read it, and thereby became aware of the contents of the letter).

Additionally, Rodriguez "implored" and repeatedly requested that he be seen by an outside specialist regarding his mental conditions. Bussanich, however, refused. This denial of access to medical personnel qualified to exercise judgment about Rodriguez's conditions further supports an allegation of deliberate indifference. *See Hemmings v. Gorczyk,* 134 F.3d 104, 109 (2d Cir.1998) (finding sufficient allegations of deliberate indifference to survive a motion to dismiss where medical staff performed some treatment but refused for two months to send plaintiff to outside specialist who later described plaintiff's disease symptoms as "classic" and expressed shock at the prison medical staff's failure to diagnose and treat the injury).

**\*14** The Court recognizes that "mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998). Rodriguez, however, alleges more than a disagreement about the course of treatment provided. He alleges that Bussanich and the medical department

of the MCC ignored his symptoms, sending him back to his cell without diagnosis or treatment. Even though Rodriguez did receive some treatment for his pain, there is no indication that he received any treatment for his blurry vision, bloody stool, nausea, vomiting, or auditory hallucinations. Furthermore, even if the facts suggest that MCC staff provided some medical treatment, thereby "substantially weaken[ing] his claim of deliberate indifference," the Court cannot conclude that Rodriguez's claim is "so completely devoid of merit as to justify dismissal at this early stage." *Hemmings,* 134 F.3d at 108–09.

Taking all the allegations in the complaint to be true, the Court concludes that Rodriguez has pled a serious deprivation of a constitutional right and direct knowledge and disregard of the risk of harm by Bussanich. This is sufficient to survive a motion for judgment on the pleadings. *See Baptiste,* 2010 WL 3185748, at *8 (motion to dismiss denied where plaintiff sufficiently alleged deliberate indifference by defendant who failed to properly diagnose and treat plaintiff); *Ahart,* 2007 WL 842006, at *4 (same).

### IV. Personal Involvement

Related to the Court's analysis of whether Rodriguez has pled an Eighth Amendment violation is Bussanich's argument that he be dismissed because Rodriguez failed to allege his personal involvement in a violation of Rodriguez's constitutional rights. Plaintiffs bringing constitutional claims against federal agents under *Bivens* must allege facts sufficient to show that all defendants, including those in supervisory roles, were personally involved in causing the alleged harm to the degree necessary to satisfy the elements of the alleged constitutional claim. *See Iqbal,* 556 U.S. at 676–77. A plaintiff can survive a motion to dismiss by alleging facts showing that a defendant was personally involved in the violation in at least one of five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred,

or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). *See Doe v. Whidden,* 557 F. App'x 71, 72 n. 1 (2d Cir.2014) (declining to rule on *Iqbal'* s effects on "the standards for establishing supervisory liability as articulated in *Colon v. Coughlin"* ); *Hernandez v. Goord,* 01 Civ. 9585(SHS), 2013 WL 2355448, at *7 (S.D.N.Y. May 29, 2013) ("[E]ven after ... *Iqbal,* these 'categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated.' " (quoting *Qasem v. Toro,* 737 F.Supp.2d 147, 151–52 (S.D.N.Y.2010))); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010), *aff'd,* 462 F. App'x 79 (2d Cir.2012) ( "[T]he degree of personal involvement varies depending on the constitutional provision at issue .... 'Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply.' " (quoting *Sash v. United States,* 674 F.Supp.2d 531, 544 (S.D.N.Y.2009))); *Thomas v. Calero,* 824 F.Supp.2d 488, 506 (S.D.N.Y.2011).

**\*15** Bussanich was the Clinical Director at the MCC at all times relevant to this action and was directly involved in the treatment of Rodriguez's condition. The complaint indicates that Bussanich repeatedly failed to take reasonable measures in response to Rodriguez's serious medical condition despite being informed of these conditions by Rodriguez verbally, through a grievance, an email, and letters. Rodriguez communicated his deteriorating condition to Bussanich, but Bussanich "continue[d] to send [him] back to [his] unit and incorrectly diagnose[d] [Rodriguez] and [gave him] medication that [made him] sick and worsen[ed][his] condition." (Compl. at 15.) Contrary to Bussanich's assertion, Rodriguez goes beyond providing

mere conclusory statements that Bussanich was personally involved.

For the reasons set forth above, Rodriguez has alleged Bussanich's personal involvement. Any remaining doubts or gaps as to his specific involvement are properly resolved beyond the pleading stage of the litigation. *Grullon,* 720 F.3d at 141 (holding that potential factual issues as to personal involvement could not be resolved without development of a factual record and that dismissal without an opportunity for additional discovery would be premature) (citing *Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998)); *Jean–Laurent v. Lawrence,* 12 Civ. 1502(JPO), 2014 WL 1282309, at *3 (S.D.N.Y. Mar. 28, 2014) ("[T]he question at [the motion to dismiss stage] is whether [plaintiff] has plausibly alleged [defendant's] personal involvement, not whether he made detailed allegations in support of each element of his claim. Reasonable inferences are permissible to bridge the gaps in a plaintiff's allegations. The purpose of discovery is to fill in those gaps.") (citing *Grullon,* 720 F.3d at 141); *Williams v. Koenigsmann,* 03 Civ. 5267(SAS), 2004 WL 315279, at *5 (S.D.N.Y. Feb. 18, 2004) ("The personal involvement of [the defendants], or lack thereof, is a matter to be explored in discovery. It would be premature to conclude that these defendants were not personally involved in the alleged constitutional violations based solely on a review of the pleadings.").

## V. Qualified Immunity

Finally, Bussanich argues that Rodriguez's complaint should be dismissed because Bussanich is entitled to qualified immunity. Federal officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Looney v. Black,* 702 F.3d 701, 705–06 (2d Cir.2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "Defendants are entitled to qualified immunity if they can establish either that (1) a constitutional right was [not] violated or (2) the right was not clearly established." *Royal Crown Day Care v. Dep't of Health & Mental Hygiene of City of New York,* 746 F.3d 538, 543 (2d Cir.2013) (citation and internal quotation marks omitted) (alteration in original).

**\*16** While "a defense of qualified immunity should ordinarily be decided 'at the earliest possible stage in

litigation,' " *Castro v. United States,* 34 F.3d 106, 112 (2d Cir.1994), it is appropriate to delay a decision where further discovery is necessary. *See id.* (finding the need for discovery on the reasonableness of defendant's conduct a justification to vacate the grant of a motion for summary judgment on qualified immunity grounds). For qualified immunity to bar suit at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, ... the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004) (citations omitted).

Bussanich contends that he is entitled to qualified immunity because Rodriguez cannot establish his personal involvement in the violation of a constitutional right. He does not argue that the law was not clearly established or that a reasonable doctor would have acted similarly. Rodriguez's claims are sufficient, however, to allege a violation of his rights due to medical deliberate indifference, specifically due to a series of treatment failures by Bussanich.

The defense of qualified immunity may be applicable here, but a determination on this issue must wait until the facts are further developed because the facts supporting the defense do not "appear on the face of the complaint." *McKenna,* 386 F.3d at 436. *See e.g., Sereika v. Patel,* 411 F.Supp.2d 397, 407 (S.D.N.Y.2006) ("Dismissal on the basis of a qualified immunity defense is not appropriate where there are facts in dispute that are material to a determination of reasonableness."); *Giambalvo v. Sommer,* 10 Civ 6774(JPO), 2012 WL 4471532, at *6–7 (S.D.N.Y. Sept. 19, 2012) (denying motion to dismiss on qualified immunity grounds to "await factual development relating to whether and how defendant prison officials may have caused Plaintiff to suffer ..."). Accordingly, I recommend that Bussanich's motion to dismiss Rodriguez's claims based on qualified immunity be denied.

**CONCLUSION**

For these reasons, I recommend that Bussanich's motion for judgment on the pleadings pursuant to Rule 12(c) be DENIED. This case was filed May 2013, and no discovery has been conducted to date. Accordingly, by separate order, the Court will schedule an Initial Pretrial Conference in order to set a discovery schedule. Any application for a stay of discovery must be addressed to Judge Crotty.

\* \* \*

**NOTICE OF PROCEDURE FOR
FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a), (d) (adding three additional days when service is made under Fed.R.Civ.P. 5(b)(2) (C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed.R.Civ.P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

**\*17 SO ORDERED.**

Filed Aug. 5, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 857817

Footnotes

1  On August 1, 2013, the Court construed the complaint to allege a *Bivens* claim, dismissed claims against "Insurance of the MCC," "F.B.O.P," and "Medical Administration," and added "Warden, Metropolitan Correctional Facility" and "John or Jane Doe, head of Medical Care at Metropolitan Correctional Facility," as defendants. Dkt. 6.

2  A detailed factual background of this dispute is set forth in the R & R. The Court recites only those facts relevant to Bussanich's objections to the R & R.

1  Although Rodriguez makes no mention of *Bivens* in his complaint, the Honorable Paul A. Crotty issued an order of service on August 1, 2013, construing the complaint to allege a *Bivens* claim.

2  Because Rodriguez is no longer incarcerated at the MCC, any claims for injunctive relief are moot. *See Thompson v. Carter,* 284 F.3d 411, 415–16 (2d Cir.2002) (affirming dismissal of inmate's claims for injunctive and declaratory relief against some defendants as moot because he was no longer incarcerated at the facility).

3  Rodriguez's complaint was dated May 21, 2013. *Pro se* papers for incarcerated individuals are deemed filed on the date they are given to correctional authorities for mailing to the court. *See Houston v. Lack,* 487 U.S. 266, 270, 276 (1988). *See also Williams v. United States.* 07 Civ. 3018(RJS)(THK), 2010 WL 963474, at *4 n. 1 (S.D.N.Y. Feb. 25, 2010), *report and recommendation adopted.* 2010 WL 963465 (Mar. 16, 2010) (applying this rule in a *Bivens* action)

4  Bussanich combines his arguments on deliberate indifference and personal involvement. While a claim of deliberate indifference necessarily involves a discussion of the accused's personal involvement and, *vice versa,* the two entail distinct analyses under *Bivens. Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (holding that to establish an Eighth Amendment violation under § 1983 based on deprivation of adequate medical care, a prisoner must prove deliberate indifference to his serious medical needs); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987) (holding that a *Bivens* action requires that plaintiff allege personal involvement of each defendant in the putative constitutional violation). As such, the Court analyzes the two issues separately.

5  Because Rodriguez was a federal pretrial detainee rather than a convicted prisoner, the Court construes his allegations to arise under the Due Process Clause of the Fifth Amendment, which is the proper basis for his claims. *See Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009) (stating that the Eighth Amendment does not apply to pretrial detainees; rather, "a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody."); *Lloyd v. Lee,* 570 F.Supp.2d 556, 570 (S.D.N.Y.2008); *cf. Ingraham v. Wright,* 430 U.S. 651, 671 n. 40 (1977) ( "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."); *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244 (1983). Because, however, "it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner," courts apply the same analysis under the Due Process Clause as they would under the Eighth Amendment. *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996); *see also Nielsen v. Rabin,* 746 F.3d 58, 63 n. 2 (2d Cir.2014) (citing *Caiozzo,* 581 F.3d at 72).

---

**End of Document**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 477681
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

J & J SPORTS PRODUCTIONS, INC., Plaintiff,

v.

S & S LOUNGE, INC. d/b/a G–Bar
and Robert M. Springer, Defendants.

No. 10–CV–5627 (SLT)(JMA).
|
Feb. 3, 2011.

**Attorneys and Law Firms**

Paul J. Hooten, Paul J. Hooten & Associates, Mt. Sinai, NY, for Plaintiff.

*MEMORANDUM and ORDER*

TOWNES, District Judge.

**\*1** In December 2010, plaintiff, J & J Sports Productions, Inc., commenced this action pursuant to two sections of the Federal Communications Act of 1934, 47 U.S.C. §§ 553 and 605, alleging that it contracted to retain exclusive license to exhibit the telecast of a boxing event (the "Event"), and that defendants Robert M. Springer and S & S Lounge, Inc. ("S & S"), d/b/a G–Bar, exhibited the Event to patrons without authorization at their establishment at 1446 Broadway, Brooklyn. (Docket No. 1 at 2, 4–5.) On January 19, 2010, Mr. Springer, acting *pro se,* responded to plaintiffs complaint by filing a "Verified Motion to Dismiss" on behalf of himself and S & S. (Docket No. 4.)

Although this Court recognizes "that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest,' " *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (quoting *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006)) (emphasis in *Triestman* omitted), the Verified Motion to Dismiss does not appear to fit within any of the categories set forth in Rule 12(b) (1)-(5) of the Federal Rules of Civil Procedure. It does not allege

a lack of subject-matter or personal jurisdiction, suggest that venue is improper, or take issue with the service of process.

The Verified Motion to Dismiss could be construed as a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, in considering a Rule 12(b)(6) motion, a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Ofori–Tenkorang v. Am. Int'l Group, Inc.,* 460 F.3d 296, 298 (2d Cir.2006). Moreover, "[w]hen determining the sufficiency of plaintiff['s] claim ..., consideration is limited to the factual allegations in plaintiff['s] ... complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991)).

Mr. Springer's motion does not accept plaintiff's factual allegations as true. Rather, the Verified Motion to Dismiss specifically denies many of these allegations and attaches exhibits in an effort to establish that defendant S & S was evicted from 1446 Broadway, Brooklyn, more than 15 months prior to the Event, and that Mr. Springer moved to Florida a full 14 months prior to the Event.

If this Court were to construe the Verified Motion to Dismiss as a motion to dismiss pursuant to Rule 12(b)(6), it would have to be converted into a motion for summary judgment pursuant to Rule 12(d). However, because plaintiff has yet to have the opportunity to conduct any discovery whatsoever, this Court declines to convert the Verified Motion to Dismiss into a motion for summary judgment at this juncture. Instead, this Court directs Mr. Springer to either (1) amend his motion to advance one or more of the other defenses set forth in Rule 12(b) of the Federal Rules of Civil Procedure or (2) answer the complaint.

**\*2** Regardless of whether Mr. Springer elects to amend his motion or to answer the complaint, he is advised that

he, as a lay person, may not represent S & S. *U.S. ex rel Mergent Svcs. v. Flaherty,* 540 F.3d 89, 92 (2d Cir.2008) ("It is well established that a layman may not represent a corporation even if the sole shareholder.") (citations omitted); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) (citations omitted). Mr. Springer may act solely on his own behalf. Accordingly, if S & S is still active and has any assets, that corporation will have to retain counsel if it wishes to defend this action.

If Mr. Springer chooses to amend his motion to dismiss, he should be mindful that this Court will accept all of the factual allegations in plaintiff's complaint as true and cannot consider any evidence or factual allegations that are not found within plaintiff's complaint. *See Ofori– Tenkorang,* 460 F.3d at 298. If Mr. Springer chooses to file an answer, it must include: "(A) state [ment] in short and plain terms [of his] defenses to each claim asserted against [him]; and (B) admit or deny the allegations asserted against [him] by [plaintiff]." Fed.R.Civ.P. 8(b) (1). In addition, Mr. Springer's answer must set out any affirmative defenses that he may wish to raise. *See* Fed.R.Civ.P. 8(c).

## CONCLUSION

For the reasons set forth above, defendant Springer must either amend his motion to dismiss or file an answer to plaintiff's complaint on or before March 30, 2011. Since Mr. Springer can only file a motion or answer on his own behalf, defendant S & S Lounge, Inc ., must retain counsel if it wishes to defend this action. S & S Lounge's time to answer or move to dismiss the complaint is extended to March 30, 2011. If either defendant fails to move or answer within the time allotted, a default may be entered with respect to that party upon motion of plaintiff. If Mr. Springer has any procedural questions concerning the preparation of his motion or answer, he may contact the Pro Se Office by visiting the Clerk's Office at this Courthouse or by calling 718–613–2665.

## SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2011 WL 477681

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
Jan. 24, 1994.

MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an in-
mate then in confinement at the Federal Correction-
al Institution in Otisville, New York ("Otisville"),
filed this action for injunctive relief and damages
based upon alleged violations of his rights under
the United States Constitution, Amendments I, IV,
V, VI, IX, and XIII, and upon violations of various
laws and/or regulations governing prison adminis-
tration.[FN1] The Complaint named as defendants
G.L. Hershberger ("Hershberger"), the United
States Attorney General ("Attorney General"), Gary
Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith
("Keith"), the Bureau of Prisons ("BOP"), and the
Otisville Medical Department ("OTV Medical De-
partment") (collectively "Defendants"). Defendants
moved for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure,
or, in the alternative, for summary judgment pursu-
ant to Rule 56 of the Federal Rules of Civil Proced-
ure. For the reasons set out below, Defendants' Rule
12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Com-
plaint, pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, for failure to state a claim upon

which relief can be granted. Rule 12(c) provides:

After the pleadings are closed but within such
time as not to delay the trial, any party may move
for judgment on the pleadings. If, on a motion for
judgment on the pleadings, matters outside the
pleadings are presented to and not excluded by
the court, the motion shall be treated as one for
summary judgment and disposed of as provided
in Rule 56, and all parties shall be given reason-
able opportunity to present all material made per-
tinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that
are employed for dismissing a complaint for failure
to state a claim under Fed.R.Civ.P. 12(b)(6) are ap-
plicable" to a Rule 12(c) motion to dismiss for fail-
ure to state a claim upon which relief can be gran-
ted. See Ad–Hoc Comm. of the Baruch Black &
Hispanic Alumni Ass'n v. Bernard M. Baruch Col-
lege, 835 F.2d 980, 982 (2d Cir.1987); see also Vi-
acom Int'l. Inc. v. Time, Inc., 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Ar-
thur R. Miller, Federal Practice and Procedure ¶
1367, at 515–16 (1990). Thus, the Court must read
the Complaint generously, drawing all reasonable
inferences from the complainant's allegations. See
California Motor Transp. v. Trucking Unlimited,
404 U.S. 508, 515 (1972). Moreover,
"consideration is limited to the factual allegations
in [the] amended complaint, which are accepted as
true, to documents attached to the complaint as an
exhibit or incorporated in it by reference, to matters
of which judicial notice may be taken, or to docu-
ments either in plaintiff['s] possession or of which
plaintiff[ ] had knowledge and relied on in bringing
suit." Brass v. American Film Technologies, Inc.,
987 F.2d 142 (2d Cir.1993); accord Allen v. West-
point–Pepperell, Inc., 945 F.2d 40, 44 (2d
Cir.1991); Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42, 47–48 (2d Cir.1991), cert. denied, 112
S.Ct. 1561 (1992); Frazier v. General Elec. Co.,
930 F.2d 1004, 1007 (2d Cir.1991). Defendants,
therefore, are entitled to dismissal for failure to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

state a claim only if the Court finds beyond a doubt that "plaintiff can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

### II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H[earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

### III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint

must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

> FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

> FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.
Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**


END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.